# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: July 31, 2023

```
* * * * * * * * * * * * * * * * * * * * * * * *
GREGORY THAXTON,                    *      No. 20-1510V
                                    *
              Petitioner,            *      Special Master Sanders
v.                                   *
                                    *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                    *
              Respondent.            *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Koby J. Kirkland*, Law Office of Koby Kirkland, LLC, Mobile, AL, for Petitioner.
*Andrew Henning*, United States Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On November 2, 2020, Gregory Thaxton ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. § 300aa-10 et seq. (2012); Pet. at 1, ECF No. 1. Petitioner alleged that he suffered from "injuries listed on the Vaccine Injury Table, including [Guillain-Barré Syndrome ("GBS") [3]], resulting from adverse effects of a seasonal influenza [("flu")] vaccin[e]" he received on November 6, 2018. Pet. at 1. Following the dismissal of this case, Petitioner filed a motion for final attorneys' fees and costs. Pet'r's Mot., ECF No. 35. For the reasons discussed herein, Petitioner's motion is hereby **GRANTED**.

### I. Procedural History

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Guillain-Barré Syndrome is "rapidly progressive ascending motor neuron paralysis of unknown etiology, frequently seen after an enteric or respiratory infection. An autoimmune mechanism following viral infection has been postulated. It begins with paresthesias of the feet, followed by flaccid paralysis of the entire lower limbs, ascending to the trunk, upper limbs, and face[.]" *Dorland's Illustrated Medical Dictionary* 1802 (33rd ed. 2020).

Petitioner filed his birth certificate, medical records, and an affidavit with his petition. Pet'r's Exs. 1–5, ECF No. 1. He also filed a statement of completion. ECF No. 6. On February 8, 2021, Petitioner field additional medical records and a second statement of completion. Pet'r's Exs. 6–13, ECF No. 11; ECF No. 13. Respondent filed his Rule 4(c) report, opposing compensation, on July 6, 2021. Resp't's Report, ECF No. 20. Petitioner filed a response to Respondent's report as well as several articles of medical literature on July 30, 2021. Pet'r's Exs. 14–21, ECF No. 21. Petitioner also refiled certified copies of previously filed medical records on October 18, 2021.[4] ECF No. 24. On January 21, 2022, I ordered Petitioner to file an expert report by no later than March 22, 2022. Order at 1–2, ECF No. 26. Petitioner filed one motion for extension of time before filing a motion to dismiss on May 19, 2022. ECF Nos. 27, 29. I granted Petitioner's motion and issued a dismissal decision on May 23, 2022. Decision, ECF No. 30.

On September 2, 2022, Petitioner filed a motion for attorneys' fees and costs, along with supporting documentation. Pet'r's Mot. On October 13, 2022, Respondent responded to the motion in opposition, "on the grounds that [P]etitioner lacked a reasonable basis for his claim." Resp't's Resp. at 1, ECF No. 39. Petitioner replied on October 20, 2022. Pet'r's Reply, ECF No. 40. After consideration of the entire record, pursuant to the Federal Circuit's guidance on what constitutes objective evidence of causation, I find that Petitioner's claim had reasonable basis and grant his motion for attorneys' fees and costs.

## II. Petitioner's Medical History

Petitioner was sixty-seven years old at the time he received the flu vaccine at issue. *See* Pet'r's Ex. 1 at 2, ECF No. 1-4. His relevant pre-vaccination medical history includes a visit to his primary care physician ("PCP") on January 2, 2018, with complaints of dizziness, confusion, disorientation, and headaches. Pet'r's Ex. 6 at 221, ECF No. 11-1. Petitioner received a flu vaccination at his PCP's office on November 6, 2018. *Id.* at 150. Thirty-seven days later, on December 13, 2018, Petitioner returned to his PCP with complaints of syncope, weakness, and soreness. *Id.* at 138. Petitioner underwent labs and an MRI, which excluded a possible stroke. *Id.* at 142–143, 131.

On January 10, 2019, approximately two months after vaccination, Petitioner returned to his PCP, reporting that his symptoms had returned three days prior. *Id.* at 112. His diagnoses included vertigo, unstable gait, fatigue, and anxiety. *Id.* at 115–16. Petitioner was instructed to go to the emergency department ("ED") if his symptoms worsened. *Id.* at 116. When Petitioner's symptoms continued, Petitioner was referred to neurologist Paul LaPenna, D.O. Pet'r's Ex. 8 at 73, ECF No. 11-4. An examination revealed ptosis of the right eyelid, absent lower extremity reflexes, and a wide-based gait with inability to walk in tandem. *Id.* at 76. Dr. LaPenna suspected that Petitioner had suffered a seizure and ordered additional testing. *Id.* at 77. On January 22, 2019, Petitioner was admitted to the ED for acute renal failure. Pet'r's Ex. 6 at 90. After continued testing in February, clinical correlation was recommended for diabetic neuropathy or other causes of lumbosacral radiculopathy. Pet'r's Ex. 8 at 54.

---

[4] Petitioner mistakenly marked these exhibits as Exhibit 14 and Exhibit 15.

On February 6, 2019, Petitioner followed up with Dr. LaPenna for continued episodes of poor balance, disorientation, and cognitive decline. *Id.* at 37. An exam revealed that Petitioner had absent reflexes in the lower extremities, wide-based gait, poor balance, and an inability to perform tandem gait. *Id.* at 40. Dr. LaPenna's differential diagnoses included "autoimmune encephalitis/paraneoplastic syndromes and GBS vari[an]ts." *Id.* at 42.

The next day, on February 7, 2019, Petitioner presented to the St. Francis Hospital ED with slurred speech, confusion, and difficulty ambulating beginning in the early afternoon. Pet'r's Ex. 7.2 at 650, ECF No. 11-3. Petitioner was admitted to the hospital and treated with a five-day course of IVIG and steroids. *Id.* at 655. His course was complicated by acute renal insufficiency, but his condition dramatically improved following his treatment, supplemented with hydration therapy. *Id.* The final neurology assessment at discharge on February 12, 2019, was "[l]ikely Bickerstaff brain stem encephalitis (GBS variant)." *Id.* at 666. Petitioner returned to the hospital with similar symptoms on April 1, 2019, and April 6, 2019. Pet'r's Ex. 7.1 at 474–75, 218, ECF No. 11-2. Petitioner's daughter revealed to medical staff that her father was a "recovering alcoholic" and that she was concerned about alcoholism. *Id.* at 215, 223, 242, 256. A blood alcohol concentration test on April 6, 2019, revealed that Petitioner's levels were .179, over twice the legal driving limit. *See id.* at 236. Following this revelation, Petitioner's neurologist in the ED opined that Petitioner's "alcohol use may be the primary source of his symptoms," but his neurologist noted that he "cannot be certain of this." *Id.* at 242. Petitioner ultimately admitted that he had not disclosed his alcoholism and that it had "gotten out of control." *Id.* at 242, 246.

On May 21, 2019, Dr. LaPenna reviewed Petitioner hospital records and noted that Petitioner's elevated BAC made it "very unclear if patient's symptoms were due to a[n] autoimmune etiology or the chronic use of alcohol." Pet'r's Ex. 8 at 16. Petitioner's tests for autoimmune conditions were all negative, but Dr. LaPenna believed that autoimmune encephalopathy was the "most likely explanation for [Petitioner's] symptoms." *Id.* at 20. Dr. LaPenna characterized Petitioner's alcoholism as a "confounding factor[.]" *Id.*

Petitioner was seen on June 1, 2019, at St. Francis Hospital with complaints of "intermittent ataxia, slurred speech, [and] difficulty processing thoughts[.]" Pet'r's Ex. 7.1 at 10. His BAC was measured at .27, but he denied drinking any alcohol when confronted. *Id.* at 15. Petitioner was evaluated by neurologist John McBurney, M.D., who noted:

> On previous admissions, it was thought that [Petitioner's] symptoms may have been related to a [GBS] type syndrome[,] and he was treated with IVIG. However, his clinical picture has become confounded by chronic alcoholism, and it is now felt that [Petitioner's] symptoms are most likely related to chronic alcohol use. All of [his] symptoms can be explained by chronic alcohol use. Because IVIG can have potential side effects, especially in the setting of alcohol use, we do not recommend treating with IVIG.

*Id.* at 35.

Petitioner followed up with Dr. LaPenna on July 3, 2019. Pet'r's Ex. 8 at 4. Dr. LaPenna concluded the following with respect to Petitioner's clinical presentation and potential diagnosis:

3

> Three possibilities exist. First, this all may be secondary to alcohol use[,] and his CSF protein was a red herring. Second, he may have had GBS (which is typically a monophasic illness) and has had an insufficient recovery in the setting of chronic alcohol use. Alcohol may exacerbate his prior symptoms. Third, he has some autoimmune encephalopathy *and* chronic alcoholism. The first possibility seems the most likely at this point.

*Id.* at 8 (emphasis in original). Dr. LaPenna did not continue to recommend IVIG treatment for Petitioner. *Id.*

### III.    Applicable Legal Standards

Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good faith. *See, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.,* 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.[5] *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner,* 2007 WL 4410030, at *6–7. Instead, the claim must at least be supported by objective evidence – medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). In *Cottingham*, the Federal Circuit further "explained that the quantum of objective evidence needed to establish reasonable basis for a claim, including causation, is 'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379 (Fed. Cir. 2021) (quoting *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020)).

The Federal Circuit has made a determination of law regarding what constitutes "objective" evidence in the context of a reasonable basis analysis. Indeed, it found that multiple pieces of evidence, perhaps not sufficient alone, when taken together, can amount to more than a mere scintilla. *See id.* at 1379–81. Furthermore, the Federal Circuit explained that "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Cottingham*, 971 F.3d at 1346.

---

[5] Respondent has not contested good faith in this case. It is not at issue.

While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

### IV.  Analysis

Respondent argues that Petitioner's claim lacked a reasonable basis because "[P]etitioner was never able to demonstrate that he suffered the injury alleged -- GBS -- within the Table definition or that his condition was caused in fact by his flu vaccine." Resp't's Resp. at 21. Respondent further argues that "[a] review of [P]etitioner's complete medical records [at the time of filing] would have shown that any initial concerns that he was suffering from GBS or had symptoms of GBS were eclipsed by his actual history of alcohol abuse, such that any claims of GBS were unsustainable." *Id.* While Respondent is correct that Petitioner was ultimately unable to establish more likely than not that his symptoms were caused by the flu vaccine and not his alcoholism, the Federal Circuit has found that the ability to establish causation by a preponderance of evidence is not the standard for finding reasonable basis. Petitioner needs only to submit "more than a mere scintilla" of objective evidence in support of his claim." *James-Cornelius*, 984 F.3d at 1379. In fact, the Federal Circuit has specifically held that "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Cottingham*, 971 F.3d at 1346.

In this case, Petitioner's own treating neurologist was unable to state unequivocally that Petitioner's condition was caused by his alcoholism. While Dr. LaPenna opined that alcoholism was most likely the cause of Petitioner's symptoms, he also demurred that Petitioner "may have had GBS (which is typically a monophasic illness) and has had an insufficient recovery in the setting of chronic alcohol use." Pet'r's Ex. 8 at 8. Petitioner's chronic alcoholism certainly complicated his claim and precluded a successful Table claim. However, it is not impossible for an individual suffering from addiction to also develop a vaccine-caused injury. Dr. LaPenna noted this possibility. *See id.* Respondent does not dispute that GBS can be caused by the flu vaccine. Respondent does not dispute that Petitioner suffered symptoms consistent with GBS within a timeframe consistent with vaccine causation. Respondent essentially argues that Petitioner's addiction is a disqualifying factor because it is a possible alternative cause for his symptoms. In support of this contention, Respondent notes that Petitioner had a prior history of some similar symptoms, ten months prior to his vaccination. *See* Resp't's Resp. at 2 (citing Pet'r's Ex. 6 at 221). It is also important to note, however, that the record is then silent until Petitioner presented to his PCP five weeks post vaccination and continued thereafter to seek treatment for his symptoms over a period of several months. Petitioner's alcoholism is disqualifying for a Table GBS claim. *See* 42 C.F.R. § 100.3(c)(15)(v) ("To qualify as any subtype of GBS [under the Table], there must not be a more likely alternative diagnosis for the weakness."). It does not necessarily follow, however, that Petitioner would be precluded from proceeding with on an off-Table claim. *See Schneider v. Sec'y of Health & Hum. Servs.*, No. 17-1504V, 2021 WL 6424426, at *9 (Fed. Cl. Spec. Mstr. Dec. 15, 2021) ("While there may have been concurrent conditions and injuries that [the] petitioner suffered and [R]espondent rightly states that [the] petitioner was notified about [an alternative

diagnosis] throughout the course of several years, the resolution of these issues need not be fully contemplated under reasonable basis."). Petitioner's medical records present objective evidence from a treating physician that he could have suffered from vaccine-caused GBS. In accordance with the Federal Circuit's guidance in *Cottingham* and *James-Cornelius*, I find that Petitioner's claim had a reasonable basis, and he is therefore entitled to attorneys' fees and costs.

### V.     Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners in the Program bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

#### A.  Hourly Rate

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, 2021, 2022, and 2023 can be accessed online.[6]

Petitioner requests the following hourly rates for the work of his counsel, Mr. Koby Kirkland: $295.00 per hour for work performed in 2020, $325.00 per hour for work performed in

---

[6] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*. *See* 2015 WL 5634323.

2021, $340.00 per hour for work performed between January and July of 2022, and $360.00 per hour for work performed between August and September of 2022. Invoices at 1–12, ECF No. 35-3.

Mr. Kirkland submitted an affidavit with Petitioner's motion for attorneys' fees and costs. Aff., ECF No. 35-1. Mr. Kirkland stated that he graduated from law school in 2014 and was admitted to the Texas bar the same year. *Id.* ¶¶ A–B. His practice in Texas focused primarily on medical malpractice. *Id.* ¶ B. Mr. Kirkland was admitted to the Alabama bar in 2020, and he began practicing as a solo practitioner at the Law Office of Koby Kirkland, LLC in Mobile, Alabama in March of 2021. *Id.* ¶¶ A, C. Since opening his firm, Mr. Kirkland has "primarily handled personal injury cases in Alabama and Texas, vaccine injury compensation claims for clients nationwide, real estate renovation disputes, and medical malpractice claims under the Federal Tort Claims Act." *Id.* ¶ C. Mr. Kirkland noted that when Petitioner "first contacted [Mr. Kirkland] in April 2020, [he] was working remotely as a contract attorney for the Houston, Texas law firm of Mejias Lindsay, PLLC (now Mejias & Associates, PLLC)." *Id.* ¶ L. Mr. Kirkland continued that "Mejias Lindsay, PLLC paid the case costs and expenses until 2021, when [he] opened [his solo practice] and took responsibility for all subsequent expenses." *Id.* Mr. Kirkland explained that "[t]he costs and expenses submitted to this Court for reimbursement are comprised of payments made by both Mejias Lindsay, PLLC and the Law Office of Koby Kirkland, LLC." *Id.* Mr. Kirkland stated that this case is his second case in the Program and that he has since filed a third petition and is working on filing additional claims. *Id.* ¶ D.

In support of Mr. Kirkland's requested rates since practicing in Mobile, Alabama, Petitioner filed an "Economic Survey of Lawyers in Alabama" published in 2014. Pet'r's Ex. 27, ECF No. 35-17. Mr. Kirkland stated that the Alabama bar confirmed to him that its most recent data is from 2014. Aff. ¶ F. Mr. Kirkland noted that "as of 2014, the largest single group pf private practice attorney respondents (14.5%) reported their standard hourly rate to be between $200[.00] and $224[.00] per hour[.]" *Id.* (citing Pet'r's Ex. 27 at 9). Mr. Kirkland noted that 44% of those surveyed in 2014 charged less than $200.00 per hour, and 56% charged more than $200.00. *Id.* (citing Pet'r's Ex. 27 at 9). However, only 24.5% of the survey's total respondents had been admitted to the Alabama bar for ten or fewer years. Pet'r's Ex. 27 at 2. In addition, Petitioner submitted affidavits from two attorneys practicing in Mobile, Alabama. The first attorney practices corporate law and graduated from law school in 2018. Pet'r's Ex. 28 ¶ A–B, ECF No. 35-18. He charges between $275.00 and $330.00 per hour. *Id.* ¶ D. The second attorney graduated from law school in 2012 and practices "in the areas of construction, warranty, products liability, malpractice, and fraud." Pet'r's Ex. 29 ¶ A–B, ECF No. 35-19. He stated that his standard rate is $350.00 per hour. *Id.* ¶ E.

Between 2020 and February of 2021, Mr. Kirkland was working for a firm located in Houston, Texas, where forum rates apply. *See, e.g.*, *Hudson v. Sec'y of Health & Hum. Servs.*, No. 15-114V, 2016 WL 3571709, at *3 (Fed. Cl. Spec. Mstr. June 3, 2016). His requested rates for 2020 through February of 2021 are consistent with his experience level and the OSM Fee Schedules for 2020 and 2021, and I therefore find them reasonable. However, Mr. Kirkland continued requesting forum rates for March of 2021 through 2022, when his practice was located in Mobile, Alabama. The question of whether attorneys in Mobile, Alabama are entitled to forum rates has yet to be considered by the Office of Special Masters. Special masters have, however, awarded forum rates to attorneys practicing in other Alabama metropolitan areas. Birmingham,

7

Alabama, which is a larger metropolitan area than Mobile, has been determined to be in-forum. *Greer v. Sec'y of Health & Hum. Servs.*, No. 16-1345V, 2018 WL 1125695, at *4 (Fed. Cl. Spec. Mstr. Jan. 17, 2018). I have previously determined that forum rates were appropriate for an attorney located in Montgomery, Alabama, which is slightly smaller than Mobile. *See Ramsay v. Sec'y of Health & Hum. Servs.*, No. 11-549V, 2017 WL 6506598, at *2 (Fed. Cl. Spec. Mstr. Nov. 22, 2017). Furthermore, overall cost of living appears to be slightly higher in Mobile than in Montgomery.[7] The 2014 survey Petitioner filed is too general to indicate whether forum rates should apply in this case, but the affidavits he filed from Mobile-based attorneys with a similar amount of experience as Mr. Kirkland suggest that forum rates are appropriate. In light of my previous decision in *Ramsay* as well as the affidavits Petitioner filed, I find that forum rates are appropriate in this case.

Therefore, I award Mr. Kirkland a rate of $295.00 per hour for all work performed in 2020, a rate of $325.00 per hour for all work performed in 2021, and a rate of $340.00 per hour for all work performed in 2022, as these rates are consistent with the OSM Fee Schedules and Mr. Kirkland's experience. Although Mr. Kirkland requested a rate of $360.00 per hour for work performed in August and September of 2022, Petitioner has not presented evidence that this mid-year increase is warranted.

### B. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.,* No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.,* No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch,* 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Attorneys also will not be compensated for the time they spend familiarizing themselves with Program practices. *See, e.g.*, *Purvis v. Sec'y of Health & Hum. Servs.*, No. 17-1343V, 2019 WL 2867121, at *3 (Fed. Cl. Spec. Mstr. May 30, 2019). Furthermore, while attorneys may be compensated for non-attorney work, they "cannot bill attorney rates for paralegal-level work." *See, e.g.*, *id.*, at *4. The Program compensates such tasks at paralegal rates. *Id.*

Petitioner requests $32,071.75 in attorneys' fees for his counsel. Invoices at 12. Upon review of the submitted billing records, I find the time billed somewhat excessive for the work performed in this case. The invoice entries are generally sufficiently detailed for an assessment to be made of the entries' reasonableness. However, a reduction is necessary due to time billed for administrative tasks and for Mr. Kirkland's review of Program guidelines, as well as a small

---

[7] Best Places, 2023 Cost of Living Calculator, Montgomery, Alabama vs Mobile, Alabama, https://www.bestplaces.net/cost-of-living/montgomery-al/mobile-al/50000 (last visited July 27, 2023).

number of paralegal tasks billed at attorney rates. For instance, Mr. Kirkland billed for administrative tasks such as creating a case plan and business fee/expenses arrangement with Mejias & Associates, updating his PACER account and linking it with CM/ECF, filing documents, adding page numbers to exhibits, faxing and mailing, uploading records to Dropbox, printing documents, and creating a PDF. *Id.* at 1–12. He repeatedly billed for reviewing Program rules and guidelines and seeking advice from experienced Program practitioners on tasks such as preparing Petitioner's petition, withdrawing from the case, dismissing the case, and preparing a motion for attorneys' fees. *Id.* at 2–3, 6, 9–11. Mr. Kirkland occasionally requested attorney rates for tasks normally suited to paralegals, such as checking on the status of and requesting medical records and checking the docket for new filings or orders. *See id.* at 1, 4–5, 7–8. I find these issues, including the slightly adjusted rates, result in a total reasonable reduction of ten percent. Accordingly, Petitioner is entitled to final attorneys' fees in the amount of **$28,864.57.**

### C. Attorney Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $6,143.90 in attorneys' costs. List of Expenses, ECF No. 35-4. This is comprised of costs for acquiring medical records, Petitioner's Court filing fee, mailing expenses, and payments to expert neurologist Dr. David Altman. *Id.* Petitioner has provided adequate documentation of these expenses, and they appear reasonable for the work performed in this case. *See* Pet'r's Ex. 25, ECF No. 35-15; Pet'r's Ex. 26, ECF No. 35-16. Accordingly, Petitioner is entitled to final attorneys' costs in the amount of **$6,143.90.**

## VI. Conclusion

Petitioner's motion is hereby **GRANTED**. In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than the reductions delineated above, is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and his counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $32,071.75 |
| (Reduction to Fees) | - ($3,207.18) |
| **Total Attorneys' Fees Awarded** | **$28,864.57** |
| | |
| Attorneys' Costs Requested | $6,143.90 |
| (Reduction of Costs) | - ($0.00) |
| **Total Attorneys' Costs Awarded** | **$6,143.90** |
| | |
| **Total Attorneys' Fees and Costs** | **$35,008.47** |

Accordingly, the undersigned awards a lump sum in the amount of **$35,008.47** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Koby Kirkland, for final attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[8]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders  
Herbrina D. Sanders  
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.